CITY OF NORTH LAS VEGAS, a Municipal Corporation, Appellant, v. PARDEE CONSTRUCTION COMPANY OF NEVADA, a Nevada Corporation, Respondent.

No. 30475

April 13, 2001                                    21 P.3d 8

[Rehearing denied March 28, 2002]

*Rawlings Olson Cannon Gormley & Desruisseaux* and *Aaron R. Maurice,* Las Vegas, for Appellant.

*Harrison Kemp & Jones, Chtd.,* and *William L. Coulthard* and *Jennifer C. Popick,* Las Vegas, for Respondent.

*David R. Olsen,* City Attorney, Boulder City, for Amicus Curiae City of Boulder City.

*Bradford R. Jerbic,* City Attorney, Las Vegas, for Amicus Curiae City of Las Vegas.

*Shauna M. Hughes,* City Attorney, and *Catherine E. Conroy,* Assistant City Attorney, Henderson, for Amicus Curiae City of Henderson.

*Charles K. Hauser,* General Counsel, and *John J. Entsminger,* Associate General Counsel, Las Vegas, for Amicus Curiae Southern Nevada Water Authority.

Before SHEARING, AGOSTI and LEAVITT, JJ.

## OPINION

*Per Curiam:*

At issue in this case is whether a regional water connection charge imposed by a city on a developer is a development impact fee or a cost-based fee. The development agreement between the City and the developer precluded any increase in development impact fees, but allowed new cost-based fees. The district court concluded that the charge was an impact fee. Because we conclude that the regional water connection charge is a cost-based fee, and not a development impact fee, we reverse and remand the judgment of the district court.

## FACTS

In December 1988, respondent, Pardee Construction Company of Nevada, entered into a written development agreement with the City of North Las Vegas. Pardee purchased approximately 1,080 acres of real property in Clark County from the City for a planned development of 8,500 dwelling units. A key provision in the development agreement prohibited the City from imposing any new or any increases in existing development impact fees. Pardee agreed to pay existing development impact fees and any new cost-based fees.

In 1991, seven southern Nevada municipalities, including the City, created the Southern Nevada Water Authority (Water Authority). Through the Water Authority, the municipalities sought to address water issues on a regional, rather than an individual, purveyor basis, and to establish a coordinated water management and conservation program to ensure sufficient water supply for southern Nevada. The Water Authority administers the Southern Nevada Water System (Water System), which is a facility consisting of diversion, treatment, conveyance, turnout, power transmission, and related facilities, by which Colorado River water is made potable and conveyed into the water systems of Water Authority purveyor members and Nellis Air Force Base.

In response to the increasing demand for water, the Water Authority developed a capital improvements plan that was adopted by all Water Authority members on December 4, 1995, and subsequently amended on June 20, 1996, and again on January 16, 1997. The goal of the capital improvements plan is to develop a reliable and demand-responsive municipal water system that would supplement the existing and severely strained water system

during periods of curtailed production or system failures, and to provide Nevada full access to its Colorado River water entitlement. The capital improvements plan covers a thirty-year period, from 1995 to 2025, and will more than double the Water System's capacity from 400 million gallons per day to 900 million gallons per day. The Water Authority's capital improvements plan is not a capital expansion or improvement plan of the City and does nothing to increase or improve the infrastructure of the City's own water distribution system.

The Water System delivers water to water purveyors, not to individual customers. The City is both a member of the Water Authority and a purveyor member of the Water System. The Las Vegas Valley Water District is the operating agent of the Water Authority.

Currently, the Water System brings water to four turnouts through two pipelines to the City. The City distributes water to its customers within and outside city limits, and owns the water distribution system that distributes the water from the turnouts to its customers. The facilities that bring the water to the turnouts belong to the Water System and are owned by the Water Authority. Thus, the Water System capital improvements plan benefits the City through increased water capacity and reliability, but does not increase the City's own infrastructure.

The City delivered 34,049 and 38,192 acre feet of water to its customers in 1995 and 1996, respectively. For 1997 and 1998, respectively, the City estimated it would deliver 41,750 and 45,704 acre feet of water to its customers. In 1997, the City held a contractual allocation for only 40,089 acre feet of water, including 5,711 acre feet of ground water. Membership in the Water Authority allows the City to take and sell more water than its contractual allocation by using unused allocations of other Water Authority members and other states. Thus, if the City had not joined the Water Authority, it would have had to cease issuing building permits, including those requested by Pardee, sometime before 1997 because it would not have been able to supply the water needed for more growth.

The City now pays for water and for increased water capacity, when needed, from the Water Authority in four ways: (1) through water delivery charges, (2) through water connection fees, (3) through a $0.05 per thousand gallons commodity charge, and (4) through assessments. The Water Authority sets water delivery charges to cover Water Authority operating costs, including debt service. In order to pay for capital improvements and debt service on its capital improvements plan, the Water Authority assesses connection fees and commodity charges. When revenues from connection fees and commodity charges fall short, the Water Authority charges equitable assessment fees.

The City collects and remits to the Water Authority the amount of the connection fees and commodity charges monthly. The Water Authority Facilities and Operations Agreement gives Water System purveyor members absolute discretion to set water fees and charges for their customers. The agreement also gives purveyor members the right to meet their financial obligations to the Water Authority through customer fees and charges or through other revenue sources that are legally available.

The City decided to pass on all Water System connection fees and commodity charges directly to its customers and, therefore, adopted Ordinance No. 1176, which has been codified in the City's municipal code at sections 13.04.020(K) and 13.04.030(I). Effective March 1, 1996, section 3 of the ordinance imposed a "regional connection charge" on all new development to collect the Water System connection fee. In section 2, it also imposed a "regional commodity charge," effective November 1996, on all new development to collect the Water System commodity charge.

The City makes no profit from these regional water fees or charges. Instead, the City charges the customer exactly what the City is being charged for the services and turns all money collected over to the Water Authority. From March 1, 1996, through December 1999, the City paid the Water Authority $25,372,700 in water connection charges.

In August 1996, Pardee filed an action for declaratory relief in Clark County District Court alleging that the City's imposition of regional water connection charges on Pardee, pursuant to Ordinance No. 1176, was a breach of Pardee's development agreement with the City. Both parties stipulated that there were no material issues of fact and filed motions for summary judgment. The district court granted Pardee's motion, concluding that the regional water connection charge was a development impact fee and, therefore, the City breached the express provisions of the development agreement by passing on the charges to Pardee. The City appealed. The cities of Las Vegas, Boulder City, and Henderson jointly filed an amicus curiae brief in support of the City, as did the Water Authority.

## DISCUSSION

The development agreement between the City and Pardee identifies two types of fees: cost-based fees and development impact fees. The City may pass on the former to Pardee, but not the latter.[1]

---

[1]The development agreement, in section 6.4(b), provides:

Only those development impact fees as referred to in Section 4.5 of this Agreement which are in effect on the Effective Date [December 10,

The City classifies the regional water connection charge as a cost-based fee because the City simply passes on to the developer the amount the Water Authority charges the City. The charge is based on actual costs to the City, with none of the money collected going toward any of the City's own capital improvements programs. According to the City, the fact that the Water Authority uses the money for the Water System's capital improvements does not convert the charge from a cost-based fee to the City to a development impact fee for the City's capital improvements.

Section 1.5 of the development agreement defines development impact fees as "all those fees, charges, or assessments which are or may be imposed as a condition to any development of the Project Site for capital improvements or maintenance costs in categories such as park, library and fire protection fees, road assessments, bridges, and flood control."

The term "impact fee" in the development agreement must be read in conjunction with NRS Chapter 278B, which regulates and authorizes the imposition of impact fees. Chapter 278B makes clear that the developer can be charged impact fees only for capital improvement projects of the local government that is imposing the impact fee.[2] Only the city or county is a local government which may charge an impact fee.[3] In order to be authorized by the legislature to charge an impact fee, the City must comply with numerous statutory provisions in establishing a capital improvement plan.[4] The water connection charge that is being levied by the Water Authority on the City cannot be an impact fee under the provisions of Chapter 278B.

On the other hand, "cost-based fee" is readily understood in its ordinary meaning. The water connection charge is levied by the Water Authority on the City. The charge is a cost to the City which the City has chosen to pass on to Pardee; in other words, it is a cost-based fee to the City.

## CONCLUSION

We conclude that the water connection charge is a cost-based fee, not a development impact fee, under the terms of the agreement between Pardee and the City. The district court therefore erred in granting summary judgment to Pardee. Accordingly, we reverse the district court's order of summary judgment and

---

1988] may be imposed. No increases in such fees may be imposed, and no new development impact fees may be imposed. City may increase cost based fees as defined in Section 4.5 of this Agreement.

[2]NRS 278B.160.

[3]NRS 278B.070.

[4]NRS 278B.150-.210.

remand this case to the district court for proceedings consistent with this opinion.